UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COACH, INC. and COACH SERVICES, INC.,

                Plaintiffs,                    Case No. 11-cv-12638

                                                Paul D. Borman
v.                                    United States District Judge

                                                Laurie J. Michelson
RICHIE'S PLAYHOUSE INC. d/b/a          United States Magistrate Judge
Luxury Replicas, 16235 South US 27,
Lansing MI 48906, RICHARD L.
KELLEY, JR., BRYNN KELLEY, and
UNKNOWN DEFENDANTS 1-10 (John Does),

                Defendants.
_____/

OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO DEFENDANTS' LIABILITY ON TRADEMARK COUNTERFEITING,
TRADEMARK INFRINGEMENT AND COPYRIGHT INFRINGEMENT (ECF NO. 95)

      This matter is before the Court on Plaintiffs Coach, Inc. and Coach Services, Inc.'s ("Coach")

Motion for Partial Summary Judgement as to Defendants' Liability on Trademark Counterfeiting,

Trademark Infringement and Copyright Infringement. (ECF No. 95.) Defendants filed a Response

(ECF No. 104) and Coach filed a Reply (ECF No. 107). The Court held a hearing on November 28,

2012. Following the November 28, 2012 hearing, the parties were encouraged to, and did appear

before Magistrate Judge Laurie Michelson on January 31, 2013, in a further effort to settle this

matter. The matter did not settle and the Court, for the reasons that follow, GRANTS Coach's

motion for partial summary judgment on the issue of liability for trademark counterfeiting and

infringement and copyright infringement.

1

## INTRODUCTION

This action involves Coach's claims of trademark and copyright infringement against Defendants Richie's Playhouse and Richard and Brynn Kelley, self-proclaimed producers of Coach "replica" merchandise. Coach alleges the following Counts: Count I Trademark Counterfeiting 15 U.S.C. § 1114; Count II Trademark Infringement 15 U.S.C. § 1114; Count III Trade Dress Infringement 15 U.S.C. § 1125(a); Count IV False Designation of Origin and False Advertising 15 U.S.C. § 1125(a); Count V Trademark Dilution 15 U.S.C. § 1125(c); Count VI Copyright Infringement 17 U.S.C. § 501; Count VII Michigan Consumer Protection Act; Count VIII Common Law Copyright Infringement; Count IX Common Law Unfair Competition; Count X Commercial Misappropriation; Count XI Unjust Enrichment; Count XII Piercing the Corporate Veil; Count XIII Civil Conspiracy.[1]

In the instant motion, Coach seeks partial summary judgment as to Defendants Richie's Playhouse Inc. d/b/a/ Luxury Replicas and Richard L. Kelley, Jr. (collectively herein "Defendants") on the issue of liability as to Counts I (Trademark Counterfeiting), II (Trademark Infringement) and VI (Copyright Infringement). Defendants concede that they have sold "replica" Coach merchandise but assert that they publicly disclose at the point of sale, as the name of their store "Luxury Replicas"

---

[1] On March 16, 2012, Plaintiffs filed their First Amended Complaint ("FAC") that added Brynn Kelley as a Defendant and also added the Civil Conspiracy Count (Count XIII). In the instant motion for partial summary judgment as to liability, Plaintiffs seek judgment as to Defendants Richard Kelley and Richie's Playhouse and do not seek judgment against Brynn Kelley. Plaintiffs state that the allegations as to Defendants Richard Kelley and Richie's Playhouse in the FAC are identical to those contained in the original Complaint. Accordingly, in the instant motion for partial summary judgment, Plaintiffs seek a determination as to liability on Counts I (Trademark Counterfeiting), II (Trademark Infringement) and VI (Copyright Infringement) as to Defendants Richard Kelley and Richie's Playhouse only. (ECF No. 124, Addendum to Plaintiffs Motion for Partial Summary Judgment.)

suggests, that the goods they sell are not authentic Coach merchandise. Defendants claim that this disclosure shields them from liability for infringement of Coach trademarks or copyrights. Defendants also suggest that Coach has failed to provide evidence of actual confusion.

## I.   BACKGROUND

Coach is a well-known and highly regarded worldwide manufacturer of apparel, luggage, and fashion accessories that are protected by numerous legally registered trademarks and copyrights . (ECF No. 95, Mot. Partial Summ. Judg. Ex. A, Second Declaration of Ethan Y. Lau, February 9, 2011, ¶¶ 3-7.) In early 2011, it came to Coach's attention that Defendant Richie's Playhouse, d/b/a Luxury Replicas, Inc., was selling, storing and warehousing counterfeit merchandise bearing marks substantially similar to the federally registered trademarks of Coach Inc. *Id.* ¶ 8. Specifically, Coach claims that the following marks have been infringed by Defendants' conduct: 1) the Coach and Lozenge Mark, Reg. No. 2,045,676; 2) the Coach Op Art & Design Mark, Reg. No. 3,696,470; 3) The Coach & Lozenge Mark for Shoes, Reg. No. 2,983,654; 4) The Coach Est. 1941 Stylized Mark, Reg. No. 3,413,536; and 5) The Coach Leatherware Est. 1941 Mark, Reg. No. 3,441,671. Coach engaged a private investigator to look into Luxury Replica's counterfeiting operation, purchasing and photographing several items of merchandise for comparison to Coach's federally registered marks. *Id.* ¶¶ 9-11. It is undisputed that the Defendants have no license or any authority to use any of the Coach trademarks in connection with the design, manufacture, advertisement, promotion, distribution or sale of any products. *Id.* ¶ 13.

On November 23, 2011, this Court entered a Temporary Restraining Order finding that Coach was likely to succeed on the merits of its federal trademark infringement claims based upon Defendants' brazen sale of counterfeit Coach merchandise since at least 2008. (ECF No. 70,

Temporary Restraining Order (November 23, 2011 TRO), ¶¶ 1-8.) On December 7, 2011, the parties agreed to a Preliminary Injunction, continuing in effect in part the Court's November 23, 2011 TRO and requiring further submissions by Defendants regarding their assets and sales records of infringing goods sold. (ECF No. 90, Agreed Order for Preliminary Injunction.)

On December 5, 2011, Defendant Richard Kelley, the sole shareholder of Defendant Richie's Playhouse, was deposed and asserted his Fifth Amendment privilege against self-incrimination with respect to each and every question regarding the Luxury Replicas business model and sale of Coach replica goods. (Pls.' Mot. Ex. D, December 5, 2011 Deposition of Richard L. Kelley.) Thus, Defendants have not denied the substantive allegations of infringement contained in Plaintiffs' Complaint. Indeed, at the hearing on this motion, Richard Kelley stipulated to the fact that he sold merchandise that he knew he was selling merchandise that bore the Coach marks that was not authentic Coach merchandise. (ECF No. 144, Transcript of November 28, 2012 Hearing on Motion for Partial Summary Judgment 18, 20.) Richard Kelley explained to the Court at the Hearing that he sold Coach branded merchandise without malicious intent, that he believed his customers recognized that they were purchasing Coach knock-off goods and that he stopped selling Coach-branded merchandise after he was approached by Coach and sought the advice of counsel. (*Id.* at 14, 18-20.)

## II.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of

4

material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323; *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

If this burden is met by the moving party, the non-moving party's failure to make a showing

5

that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

"Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make [his] case with a showing of facts that can be established by evidence that will be admissible at trial.... In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.' Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).

## III.   ANALYSIS

### A.   Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114

Plaintiffs move for partial summary judgment only as to liability on their claims of trademark counterfeitng and infringement and only as to Defendants Richie's Playhouse and Richard Kelley. "When evaluating a Lanham Act claim for infringement of an unregistered mark, courts must determine whether the mark is protectable, and if so, whether there is a likelihood of confusion as

6

a result of the would-be infringer's use of the mark." *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 761 (6th Cir. 2005). Defendants do not contest the assertion that the Coach mark is protectable. Defendants' sole response to Plaintiffs' motion is that there is no likelihood of confusion because they sell "replica" Coach merchandise clearly labeled as such, and thus no one can possibly be confused at the point of sale.

"When evaluating the likelihood of confusion, a district court must balance the following factors: 1. strength of the plaintiff's mark; 2. relatedness of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. likely degree of purchaser care; 7. defendant's intent in selecting the mark; [and] 8. likelihood of expansion of the product lines." *Tumblebus*, 399 F.3d at 764 (citing *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir.), *cert. denied*, 459 U.S. 916 (1982)). "Even though a court must balance these factors when evaluating likelihood of confusion, not all of them are necessarily helpful in any given case . . . . Moreover, this list, though generally the predominate [sic] focus of analysis, is not exhaustive, and other variables may come into play depending on the particular facts presented." *General Motors Corp. v. Keystone Automotive Industries, Inc.*, 453 F.3d 351, 355 (6th Cir. 2006) (internal citations and quotation marks omitted). The Sixth Circuit "has joined the vast majority of courts in extending the likelihood of confusion inquiry beyond only the point of sale." *Id.* (citing *Ferrari S.P.A. Esercizio v. Roberts*, 944 F.2d 1235, 1245 (6th Cir. 1991)).

Defendants argue in the instant case that the similarity of the marks, evidence of confusion, marketing channels and degree of purchaser care are all disputed issues of fact to be determined by a jury because Defendants did not misrepresent the origin of the goods at the point of sale. As an initial matter, the Court notes that Defendants have provided no affidavit support to rebut the

7

evidence on each of these issues presented by Plaintiffs through the Declarations of Ethan Lau (Pls.'
Mot. Ex. A), James D. Schoenherr (Pls.' Mot. Ex. B), Dayanara Perez (Pls.' Mot. Ex. C) Kristina
Araya (Pls.' Mot. Ex. E).   At the summary judgment stage, Defendants are obligated to come
forward with evidence of evidentiary quality to counter Plaintiffs' well-supported motion for
summary judgment. Their failure to do so is grounds enough to grant the motion for partial summary
judgment as to liability. *CareSource*, 576 F.3d at 558.

More importantly, however, Defendants' principal defense to the claim of infringement, i.e.
that the name "Luxury Replicas" clearly conveyed to the consumer that the products sold in the store
were not authentic, so that there was no intent to deceive and no actual consumer confusion, ignores
the fact that the Sixth Circuit recognizes that likelihood of confusion can occur beyond the point of
sale.  Plaintiffs argue that "there can be no likelihood of confusion at the point of sale where a
defendant conspicuously and unequivocally informs buyers that the defendant, and not the plaintiff,
is the source of the product," *Keystone*, 453 F.3d at 355.  To be sure, "customers knowing they are
purchasing a knockoff designer purse or Rolex watch simply do not confuse the counterfeit with the
original." *Id.* (citing *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107–08 (2d Cir.
2000); *Rolex Watch U.S.A., Inc. v. Canner*, 645 F. Supp. 484, 487–88 (S.D. Fla.1986)).

However, even assuming, as Defendants assert, that they did adequately inform customers
that their Coach goods were "knockoffs," (a fact that has not been established beyond dispute at this
summary judgment stage) this does not end the infringement inquiry.  "Downstream confusion" is
also actionable in the Sixth Circuit:

> In addition to point-of-sale confusion, the Sixth Circuit recognizes that a likelihood
> of downstream confusion, also called "post-sale" confusion, is actionable: "Since
> Congress intended to protect the reputation of the manufacturer as well as to protect

8

> purchasers, the Act's protection is not limited to confusion at the point of sale."
> *Ferrari S.P.A. Esercizio [v. Roberts]*, 944 F.2d [1235] at 1245 [(6th Cir. 1991)]; *see
> also* 3 *McCarthy, supra*, at § 23:5. Thus, injection of knockoffs into the stream of
> commerce may lead to a likelihood of confusion among the general public.

*Keystone*, 453 F.3d at 356.

In assessing the likelihood of downstream confusion, the Court considers very generally the

eight factor test typically applied to determine point-of-sale confusion, with the caveat that several

of those factors presume a point-of-sale analysis and therefore offer an inherently imperfect analysis.[2]

*Id.* Most importantly, however, in a case of downstream confusion, the Court additionally must

evaluate the "the harm of injecting knockoffs into the stream of commerce." *Id.* at 358. Even absent

a showing of point-of-sale confusion, knockoffs still may harm both the public and the trademark

holder in several important ways:

> Even without point-of-sale confusion, knockoffs can harm the public and the original
> manufacturer in a number of ways, including: (1) the viewing public, as well as
> subsequent purchasers, may be deceived if expertise is required to distinguish the
> original from the counterfeit, *see Hermes*, 219 F.3d at 108; (2) the purchaser of an
> original may be harmed if the widespread existence of knockoffs decreases the
> original's value by making the previously scarce commonplace, *see id.*; (3) consumers
> desiring high quality products may be harmed if the original manufacturer decreases
> its investment in quality in order to compete more economically with less expensive
> knockoffs, *see United States v. Torkington*, 812 F.2d 1347, 1353 n. 6 (11th Cir.
> 1987); (4) the original manufacturer's reputation for quality may be damaged if
> individuals mistake an inferior counterfeit for the original, *see Ferrari S.P.A.
> Esercizio*, 944 F.2d at 1244–45; (5) the original manufacturer's reputation for rarity
> may be harmed by the influx of knockoffs onto the market, *see id.*; and (6) the
> original manufacturer may be harmed if sales decline due to the public's fear that

---

[2]  As the Sixth Circuit noted in *Ferrari*, the eight factor test used to determine likelihood of
confusion in the typical point-of-sale case focuses on the confusion of the purchaser, not of the
public, and therefore is not perfectly suited to analysis of a counterfeit or knockoff case like the
instant claims present. However, as in *Ferrari*, this Court finds that five of the eight factors, strength
of the mark, relatedness of the goods, similarity of the marks, defendant's intent in selecting the
mark and the likelihood of product expansion favor Coach in the instant case. *See Ferrari*, 944 F.2d
at 1245.

> what they are purchasing may not be the original, *see Hermes*, 219 F.3d at 108. On the other hand, courts should be wary of overprotecting public domain ideas and works whose exploitation can lead to economic efficiency, greater competition, and lower costs for consumers. 1 McCarthy, *supra*, at § 2:2 (reciting the policies underlying the laws of trademark and unfair competition).

453 F.3d at 358 (footnote omitted).

As the court noted in *Rolex Watch*, *supra*, the absence of point-of-sale confusion is simply irrelevant to the inquiry in the case of knockoff goods: "The fact that an immediate buyer of a $25 counterfeit watch does not entertain any notions that it is the real thing has no place in this analysis. Once a product is injected into commerce, there is no bar to confusion, mistake, or deception occurring at some future point in time."   The danger of confusion sought to be deterred under the Lanham Act was never meant to aim solely at "that moment in time when a single merchant reaches behind a counter at a flea market and clandestinely hands over the imitation to a buyer who is aware that it is a $25 look-alike." 645 F. Supp. at 493. Once the knockoff item is injected into the stream of commerce, it can be sold and resold and "the danger of confusion is inseparable from the counterfeit itself." *Id.* As the court noted in *Rolex Watch*, not only is the public deceived, but the trademark owner suffers great risk of dilution through cheapening of his mark:

> Individuals examining the counterfeits, believing them to be genuine Rolex watches, might find themselves unimpressed with the quality of the item and consequently be inhibited from purchasing the real time piece. Others who see the watches bearing the Rolex trademarks on so many wrists might find themselves discouraged from acquiring a genuine because the items have become too common place and no longer possess the prestige once associated with them. The fact that such bogus watches can be obtained at cheap prices only aggravates the problem. For these reasons, the legislators, proposing to provide nationwide protection for expanding businesses, did not intend a cheap price to excuse the offense of infringement.

645 F. Supp. 2d at 495. As the Sixth Circuit noted in *Ferrari*, *supra*, relying heavily on the district court's reasoning in *Rolex Watch*, quoted above, protection of a mark post point-of-sale is necessary

10

"to protect against the cheapening and dilution of the genuine product, and to protect the manufacturer's reputation." *Ferrari*, 944 F.2d at 1244.

Plaintiffs need not demonstrate actual confusion in order for this Court to conclude that there is a likelihood of confusion for purposes of finding a Lanham Act violation and their intent is irrelevant. A lack of evidence of actual confusion "does not preclude this Court from concluding that there is a 'likelihood of confusion', as actual confusion is merely one factor to be considered by the Court when it makes its determination." *Wynn Oil*, 839 F.2d at 1188 (quoting *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 914 (Fed. Cir.1984)). Indeed, the likelihood of confusion "multi-factored balancing is unnecessary in cases like this one where the defendant has misappropriated precise counterfeits of the plaintiff's trademarks on goods that compete with the trademark holder's own goods." *General Motors Corp. v. Autovation Technologies, Inc.*, 317 F. Supp. 2d 756, 761 (E.D. Mich. 2004). Where a defendant "intentionally copies a trademark design 'with the intent to derive a benefit from the reputation of another,'" the Court may presume a likelihood of confusion. *Id.* (quoting *Ford Motor Co. v. Lloyd*, 22 F. App'x 464, 467, 2001 WL 1356137, at *4 (6th Cir. 2001)). Such is the case here. Defendants have misappropriated the Coach mark and placed the counterfeit mark on the same type of goods that Coach sells, with the obvious intent of deriving some benefit from the Coach reputation in displaying the mark in such a manner.

It is easy to understand how injecting Defendants' knockoff products into the stream of commerce can both dilute the Coach name and operate to confuse the general public. Indeed, at the hearing on this motion, Defendant Richard Kelley conceded that he could see how someone other than the original customer might be confused as to the origin of the goods, although he claims not to have pondered this point before the day of the hearing. (ECF No. 144, Hr'g Tr. 18-19.) The Court

11

has examined the infringing products first hand and has studied the unopposed declarations and affidavits of Mr. Lau, Mr. Schoenherr, Ms. Perez and Ms. Araya and concludes that there is no genuine issue of material fact that there is a likelihood of confusion between the genuine Coach products and the replicas sold by Defendants. Accordingly, the Court GRANTS Coach's motion for partial summary judgment only as to liability on Counts I and II of the FAC against Defendants Richie's Playhouse and Richard Kelley.

**B.      Copyright Infringement Under 17 U.S.C. § 501.**

"In order for a Plaintiff to be entitled to summary judgment for copyright infringement, a Plaintiff must show: (1) ownership of a valid copyright; and (2) infringement of the copyrighted work." *Wilcom Pty. Ltd. v. Endless Visions*, 128 F. Supp. 2d 1027, 1030 (E.D. Mich. 1998). "Infringement of a copyright can be shown in two ways, either by direct evidence of copying, or by proof that Defendants had access to the copyrighted work and that the copyrighted work and the infringing work are 'substantially similar.'" *Id.* at 1031 (quoting *Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc.*, 150 F.3d 132, 137–38 (2d Cir.1998)). Where "[t]he similarity [] between the copy and the original is so striking, [that] there is no possibility of independent creation. . . . copying can be inferred regardless of proof of access." *Id.* at 1031-32.

Defendants do not challenge the validity of the Coach marks, do not contest Coach's ownership of the marks, and do not challenge Coach's evidence regarding the value of those marks. Moreover, Defendants do not deny that they sold merchandise bearing the distinctive Coach marks, merchandise that they call "replicas" precisely because they mimic the Coach protected marks. They have offered absolutely no rebuttal evidence, as is their burden, on any of these issues. Their only response to the copyright claim is that "further discovery is necessary." (ECF No. 104, Defs.' Resp.

12

9.) However, they do not properly move pursuant to Fed. R. Civ. P. 56(d), and have failed to demonstrate, by affidavit or declaration, what specific evidence they seek or why they have been unable to obtain such evidence to support their opposition to the motion.

Coach has produced evidence that Defendants sold goods that directly copy, or bear designs that are substantially similar to Cocah's copyrighted marks, i.e. Coach's Op Art Trademark (ECF No. 95, Mot. Exs. A ¶ 10, F) and Coach's "Leatherware Est. 1941" (ECF No. 95, Mot. Exs. A ¶ 10, G).[3] Defendants have provided absolutely no evidence of evidentiary quality that would rebut these claims. Indeed, they have not even pressed an argument defending against this claim. Simply stating that "discovery is not complete" is not sufficient in response to Coach's well-presented motion for summary judgment. In fact, discovery is now complete in this case and the parties are to appear for a pre-trial conference on March 13, 2013. Defendants have propounded no discovery and have not attempted to demonstrate that the goods they sold in fact did not bear these Coach marks or bear designs substantially similar to these Coach marks.  Indeed, they concede that they attempted to "replicate" these marks in selling their knockoff goods.  The Court concludes that Coach has demonstrated that Defendants are liable for copyright infringement as to these validly-registered copyright marks.

## IV.   CONCLUSION

For the foregoing reasons, Court GRANTS Coach's motion for partial summary judgment against Defendants Richie's Playhouse and Richard Kelley only as to liability only on Counts I, II

---

[3] Coach's FAC in Count VI refers to "many" Coach registered marks including "the Legacy Stripe" and the "Op Art" designs.  However, their motion provides evidence of only two marks that they claim Defendants have copied, i.e. the Op Art and Leatherware copyrights. (ECF No. 95, Mot. 18-19, Exs. F, G.)  The Courts ruling is limited to a finding of liability on the claim of copyright infringement as to those two marks.

and VI of the Complaint. The case will proceed to trial as to all Defendants on the remaining Counts of the Complaint and only as to the issue of damages on Counts I, II and VI.

IT IS SO ORDERED.

_____
Paul D. Borman
United States District Judge

Dated: 2|15|13

14